# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **WAYNE GARRIGAN,** individually and on behalf of all others similarly situated, | Case No. : |
| *Plaintiff*, | **CLASS ACTION COMPLAINT** |
| *v.* | **DEMAND FOR JURY TRIAL** |
| **DMB FINANCIAL, LLC**, a Massachusetts Limited Liability Company, and **COMMONWEALTH SERVICING GROUP, LLC**, a Massachusetts Limited Liability Company, | |
| *Defendants*, | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Wayne Garrigan ("Garrigan" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant DMB Financial, LLC ("DMB Financial" or "Defendant DMB Financial") and Commonwealth Servicing Group, LLC ("Commonwealth" or "Defendant Commonwealth") to (1) stop its practice of placing calls using an "automatic telephone dialing system" and/or using "an artificial or prerecorded voice" to the cellular telephones of consumers nationwide without their prior express written consent, (2) enjoin Defendants from continuing to place prerecorded telephone calls to consumers who did not provide their prior written express consent to receive them, (3) to enjoin Defendants from calling consumers who are registered on the do not call registry, and (4) obtain redress for all persons injured by their conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

1

## INTRODUCTION

1.      Defendant DMB Financial is a company that assists consumers in getting out of debt by providing debt management solutions.[1]

2.      Defendant Commonwealth is also a company that assists consumers in getting out of debt by providing debt management solutions.[2]

3.      DMB Financial and Commonwealth solicit consumers through the use of telemarketing, utilizing a prerecorded message when dialing consumer phone numbers regardless of whether those phone numbers are registered on the National Do Not Call registry, and regardless of having received written consent to place such calls.

4.      In Plaintiff's case, DMB Financial and Commonwealth used an automated dialing system to place 8 prerecorded calls to his cellular phone number that was registered on the National Do Not Call registry, despite two different requests for those calls to stop.

## PARTIES

5.      Plaintiff Wayne Garrigan resides in Bonners Ferry, Idaho.

6.      Defendant DMB Financial is a limited liability company and existing under the laws of the State of Massachusetts with a principal place of business located at 500 Cummings Center, Third Floor, Beverly, MA 01915.  Defendant conducts business throughout this District, the State of Idaho, and the United States.

7.      Defendant Commonwealth is a limited liability company and existing under the laws of the State of Massachusetts with a principal place of business located at the same address as DMB Financial at 500 Cummings Center, Third Floor, Beverly, MA 01915.  Defendant conducts business throughout this District, the State of Idaho, and the United States.

---

[1] http://www.dmbfinancial.com/
[2] http://www.commonwealthservicing.com/

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the TCPA, which is a federal statute. This Court has personal jurisdiction over both of the Defendants because the Defendants conduct a significant amount of business in this District, solicit consumers in this District, made and continue to make unsolicited prerecorded calls to this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

9.    Venue is proper in this District under 28 U.S.C. § 1391(b) because the Plaintiff is located in this District and the Defendants conduct a significant amount of business within this District and market to this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## COMMON ALLEGATIONS

**DMB Financial Set-up Commonwealth in Order to Distance Itself from Liability**

10.    Between 2009 and at least 2014, a number of complaints were placed online regarding telemarketing calls (including prerecorded calls) on behalf of DMB Financial. For example:

- "(888) 397-1420 Robo call recorded 08 May 2014 ("DMB Financial, student loan debt alleviation")"[3]

- In 2013, a consumer wrote, "Telemarketer, from DMB financial a debt management firm"[4]

---

[3] https://800notes.com/Phone.aspx/1-888-397-1420
[4] https://800notes.com/Phone.aspx/1-855-610-0879

11.     In order to improve their online reputation and avoid liability for their telemarketing calls, the owners of DMB Financial established a new company - Defendant Commonwealth in 2015.

12.     Through Commonwealth, DMB Financial was able to continue placing illegal telemarketing calls using a prerecorded message to consumer phone numbers, even if those phone numbers were registered on the National Do Not Call registry.

**Connecting DMB Financial to Commonwealth**

13.     Both Defendant DMB Financial and Defendant Commonwealth offer debt solutions to consumers.

14.     According to the Massachusetts corporate registries 2017 annual report for Commonwealth Servicing Group, LLC Matthew Guthrie and Daniel Kwiatek are the managers of Commonwealth. Similarly, according to the 2017 annual report for DMB Financial, Daniel Kwiatek and Matthew Guthrie are also the managers for DMB Financial.

**The name and business address of each Manager:**

| Title | Individual name | Address |
|---|---|---|
| MANAGER | DANIEL KWIATEK | 4 SURREY LANE DANVERS, MA 01915 USA |
| MANAGER | MATTHEW GUTHRIE | 4 SURREY LANE DANVERS, MA 01915 USA |

[5]

15.     According to their LinkedIn profiles, Guthrie and Kwiatek *are also the owners of DMB Financial,* though they do not publicize their connection to Commonwealth:

---

[5] Massachusetts Corporate Registry Search, http://corp.sec.state.ma.us/CorpWeb/CorpSearch/CorpSummary.aspx?FEIN=001171976&SEARCH_TYPE=1.



16.    The two Defendants Commonwealth and DMB Financial also share the same

address in Beverly, Massachusetts:

Defendant Commonwealth is at 500 Cummings Center,[8] and this is the same address for

Defendant DMB Financial:[9]

---

[6] Matthew Guthrie, LinkedIn, https://www.linkedin.com/in/matthew-guthrie-752a6010/
[7] Dan Kwiatek, LinkedIn, https://www.linkedin.com/in/dan-kwiatek-8944a317/
[8] Contact, Commonwealth Servicing, http://www.commonwealthservicing.com/#talk-to-us.
[9]DMB Financial, http://www.dmbfinancial.com/.

| The Commonwealth Servicing Group | DMB FINANCIAL, LLC |
|---|---|
| 500 Cummings Center<br>Suite 3450<br>Beverly, MA 01915 | 500 Cummings Center, Third Floor<br>Beverly, MA 01915<br>866-384-6232 |

17.     Defendant DMB Financial admits to placing unsolicited cold calls and engaging in telemarketing online. In a job posting for an Inside Sales Executive, Defendant states that the role requires "Experience with telemarketing . . . or cold calling":[10]

18.     Not surprisingly, given that the purpose of DMB Financial setting up Commonwealth was to shield DMB Financial from liability for their telemarketing calls, there are many complaints online now about Commonwealth (and not DMB Financial) about their unsolicited, prerecorded calls:

- "Received call today and caller tried to sell me on a plan to reduce my credit card debt. Said it was a government hardship program. Sounded more like a scam. [identified as **Commonwealth Law Group**]"[11]
- "**Prerecorded number to cell phone on DNC**. I get to reduce my debt! Actually, if they are the standard ones, they are suggesting you default on your credit cards and then they will supposedly renegotiate your debt for you. Bring on the collection calls, everyone, they are going to save me!!  But I digress.
  This was another **"2 stage" pre-record, where you have to press '1', then a second recording comes on saying if you're really interested, press '1' again.**  I'm hoping that's because people are adding a DTMF '1' to their answering machines messages to mess with them.  So they are doing which, which hopefully will drop their actual number of live leads.
  Played along with them for a little while, but they are a skittish folk (which probably results in them actually losing possible clients) and hung up on me after I asked them to repeat their company name. Always a sign of a quality institution.  They gave the name of "**Commonwealth Law Group**", and stated they were a nationwide law firm specializing in debt issues. Google shows several companies using that name, so might have to research a little more."[12]
- "**Recording** telling me how I've been selected to reduce my credit card debt."[13]

---

[10] Inside Sales Executives Job Ad, DMB Financial, Indeed.com
https://www.indeedjobs.com/jobs/1747eb4bcb61bed27dd2?from=snippet.
[11] https://whocallsme.com/Phone-Number.aspx/4124651132
[12] *id*
[13] https://800notes.com/Phone.aspx/1-717-724-9611

19.     DMB Financial still cannot cover up all of its tracks and there is some evidence online that they are still behind the telemarketing calls. Defendant DMB Financial admits to placing unsolicited cold calls and engaging in telemarketing online. In a job posting as recent as May 28th, 2018 for a "full-time" Inside Sales Representative, Defendant states that the role requires "Experience with telemarketing . . . or cold calling":[14]

In order to be successful in this role, we need someone who has:

- Experience with <u>telemarketing</u>, <u>lead generation</u>, or <u>cold calling</u>

20.     By placing the unsolicited telephone calls at issue in this Complaint, Defendant DMB Financial and Commonwealth caused Plaintiff and the other members of the Classes actual harm and cognizable legal injury.

21.     This includes the aggravation and nuisance and invasions of privacy that result from the unsolicited prerecorded telephone calls that are being made to cellular phones, and a loss of the use and enjoyment of their phones, including wear and tear to the related data, memory, software, hardware, and battery components, among other harms.

22.     In response to Defendant's unlawful conduct, Plaintiff files this action seeking an injunction requiring Defendant to cease all unwanted prerecorded / automated call activities and an award of statutory damages to the members of the Classes under the TCPA.

23.     Furthermore, Defendant calls consumers who are registered on the Do Not Call registry.


**PLAINTIFF'S ALLEGATIONS**

---

[14] Inside Sales Executives Job Ad, DMB Financial, Indeed.com
https://www.indeedjobs.com/jobs/1747eb4bcb61bed27dd2?from=snippet.

**Plaintiff Receives 8 Unsolicited Prerecorded Calls to His Cellular Phone**

24.     On March 15th 2017, Plaintiff registered his cellular number with the National Do Not Call Registry in order to avoid receiving unsolicited telemarketing calls.

25.     On January 19, 2018, Plaintiff received three calls from Defendant Commonwealth, at 8:03 AM, 8:33 AM, and 11:12 AM.

26.     Every call that Plaintiff answered was prerecorded, inviting him to press '1' in order to speak with an agent. The prerecorded message stated that pressing '2' would enter Plaintiff's phone number into a do not call list. Plaintiff pressed '2' for two of the calls.

27.     Despite the opt-out attempts, the calls did not stop. Plaintiff received another five calls over the next twelve days. Frustrated by the prerecorded calls, Plaintiff answered one of the calls he received on January 31, 2018 from Defendant Commonwealth using phone number 440-501-4196 at 10:11 AM. Plaintiff pressed '1' to speak with an agent and find out who was calling him.

28.     Plaintiff first spoke with an agent named Larry who transferred Plaintiff to Brian Levinson. Brian asked Plaintiff if he would like to reduce his debt, and asked Plaintiff to visit the website http://cwservicing.com, a website that uses the name The Commonwealth Law Group.

29.     Upon information and belief, Commonwealth Law Group is another name used by Defendant DMB Financial to distance themselves from liability.

30.     During all relevant times, Plaintiff did not have a relationship with either Defendant, or any of their affiliated companies, or request that either Defendant place calls to him or offer him their services. Simply put, neither Defendant possesses Plaintiff's prior express consent to place a telephone call to him using a prerecorded voice.

31.     The unauthorized telephone calls made by Defendants, as alleged herein, have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed his use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phones.

32.     Even worse, attempts to get the calls stopped did not work. In Plaintiff's case, he made at least two requests for the calls to stop by pressing '2' during the prerecorded message.

33.     Seeking redress for these injuries, Plaintiff, on behalf of himself and Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited prerecorded voice calls to cellular telephones and unsolicited calls to telephone numbers registered on the DNC.

## CLASS ALLEGATIONS

34.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following Classes:

> **Prerecorded No Consent Class:** All persons in the United States from four years prior to the filing of this action through the present who (1) Defendants (or a third person acting on behalf of Defendants) called, (2) on the person's cellular telephone, (3) using a prerecorded voice, and (4) for whom the Defendants claim they obtained prior express written consent in the same manner as the Defendants claim they supposedly obtained prior express written consent to call the Plaintiff.

> **Prerecorded Stop Class**: All persons in the United States who from a date four years prior to the filing of the initial complaint to the present: (1) Defendants (or a third person acting on behalf of Defendants) called, (2) on the person's cellular telephone, (3) for the purpose of selling Defendants' products and/or services, (4) using a prerecorded voice, (4) after the person informed Defendants that s/he no longer wished to receive phone calls from the Defendants.

**Do Not Call Registry Class:** All persons in the United States who (1) Defendants (or an agency acting on behalf of Defendants) called more than one time on his/her cellular telephone; (2) within any 12-month period (3) where the cellular telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendants' products and services; and (5) for whom Defendants claim (a) they obtained prior express written consent in the same manner as Defendants claim they supposedly obtained prior express written consent to call the Plaintiff, or (b) they did not obtain prior express written consent.

35.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendants have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the class definitions following appropriate discovery.

36.     **Numerosity**: The exact size of the Classes is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants placed prerecorded telephone calls to thousands of consumers who fall into the definition of the Classes, regardless of whether the people being called are registered with the National Do Not Call Registry. Members of the Classes can be easily identified through Defendants records.

37.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any

questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

    (a) whether the Defendants conduct constitutes a violation of the TCPA;

    (b) whether the Defendants systematically made telephone calls to members of the Classes without first obtaining prior express written consent to make the calls;

    (c) whether the Defendants utilized an automatic telephone dialing system to make calls to members of the Classes;

    (d) whether the Defendants made prerecorded telephone calls to members of the Classes without first obtaining prior express written consent to make the calls;

    (e) whether members of the Classes are entitled to treble damages based on the willfulness of Defendants conduct; and

    (f) whether the Defendants obtained prior express written consent to contact any class members.

    (g) whether the Defendants continued making prerecorded telephone calls to consumers after having received opt-out requests from the consumers.

38.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and the Defendants have no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to the Classes.

39.    **Appropriateness**: This class action is also appropriate for certification because the Defendants have acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. The Defendants' business practices apply to and affect the members of the

Classes uniformly, and Plaintiffs challenge of those practices hinges on the Defendants conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by the Defendants' actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from the Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**<u>FIRST CAUSE OF ACTION</u>**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227 *et seq.*)**
**(On Behalf of Plaintiff and the Prerecorded No Consent Class)**

40.    Plaintiff incorporates the foregoing factual allegations as if fully set forth herein.

41.    Defendants made prerecorded telephone calls to cellular telephone numbers belonging to Plaintiff and other members of the Prerecorded No Consent Class without first obtaining prior express written consent to receive such calls.

42.    Defendants made the telephone calls using equipment that had the capacity to store or produce telephone numbers using a random or sequential number generator, to receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention.

43.    The telephone dialing equipment utilized by the Defendants, also known as a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner. The Defendants autodialer disseminated information *en masse* to Plaintiff and other consumers.

44.     By making the unsolicited telephone calls to Plaintiff and the Prerecorded No Consent Class members' cellular telephones without their prior express written consent, and by utilizing a prerecorded voice to make those calls, the Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii).

45.     As a result of the Defendants unlawful conduct, Plaintiff and the members of the Prerecorded No Consent Class are each entitled a minimum of Five Hundred Dollars ($500.00) in damages for each such violation of the TCPA.

46.     In the event that the Court determines that the Defendants conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Prerecorded No Consent Class.

**<u>SECOND CAUSE OF ACTION</u>**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Prerecorded Stop Class)**

47.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them by reference herein.

48.     Defendants made unsolicited and unwanted prerecorded calls to telephone numbers belonging to Plaintiff and the other members of the Prerecorded Stop Class on their cellular telephones after they had informed Defendants, orally and/or through the Defendants' automated prompt system, that they no longer wished to receive such calls from Defendants.

49.     Defendants placed the unwanted phone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

50.     Defendants utilized equipment that made the prerecorded calls to Plaintiff and other members of the Prerecorded Stop Class simultaneously and without human intervention.

51.     By making unwanted autodialed phone calls to Plaintiff and other members of the Prerecorded Stop Class's cellular telephones using a prerecorded voice after they requested to no longer receive such calls, the Defendants violated 47 U.S.C. § 227(b)(1)(A) by doing so without prior express written consent.

52.     As a result of the Defendants' unlawful conduct, Plaintiff and the members of the Prerecorded Stop Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and, under Section 227(b)(3)(B), are each entitled to, inter alia, a minimum of $500 in damages for each such violation of the TCPA.

Should the Court determine that the Defendants' conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Prerecorded Stop Class.

**THIRD CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

53.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them by reference herein.

54.     47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

55.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

56.     47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[15]

57.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

58.     Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from the Defendants, as set forth in 47 C.F.R. § 64.1200(d)(3).

59.     Defendants also violated 47 C.F.R. § 64.1200(d) by failing to have an accurate written policy of dealing with do not call requests, by failing to accurately inform or train its personnel engaged in telemarketing regarding the existence and/or use of any do not call list, and by failing to internally record and honor do not call requests.

60.     Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendants in violation of 47 C.F.R. § 64.1200, as described above. As a result of the Defendants conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

To the extent the Defendants' misconduct is determined to be willful and knowing, the

---

[15] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

1.      An order certifying the Class as defined above, appointing Plaintiff Wayne Garrigan as the representative of the Class, and appointing his counsel as Class Counsel;

2.      An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into a common fund for the benefit of the Plaintiff and the Class Members;

3.      An order declaring that the Defendants' actions, as set out above, violate the TCPA;

4.      A declaratory judgment that the Defendants' telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

5.      An order requiring the Defendants to disgorge any ill-gotten funds acquired as a result of their unlawful telephone calling practices;

6.      An order requiring the Defendants to identify any third-party involved in the pre-recorded calling as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

7.      An injunction requiring the Defendants to cease all unsolicited prerecorded calling activities, and otherwise protecting the interests of the Classes;

8.      An injunction prohibiting the Defendants from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive calls made with such equipment;

9.      An injunction prohibiting the Defendants from contracting with any third-party for marketing purposes until it establishes and implements policies and procedures for ensuring the third-party's compliance with the TCPA;

10.      An injunction prohibiting the Defendants from conducting any future telemarketing activities until it has established an internal Do Not Call List as required by the TCPA;

11.      Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**WAYNE GARRIGAN**, individually and on behalf of class of similarly situated individuals

Dated: November 1, 2018               By: __/s/ James Bendell_____
                                      One of Plaintiff's Attorneys

                                      James Bendell
                                      Bendell Law Firm PLLC
                                      1810 E. Schneidmiller Avenue, Ste 140
                                      Post Falls, Idaho 83854
                                      Telephone: (208) 773-9669
                                      james@bendelllawfirm.com

                                      Avi R. Kaufman*
                                      kaufman@kaufmanpa.com
                                      KAUFMAN P.A.
                                      400 NW 26th Street
                                      Miami, FL 33127

Telephone: (305) 469-5881

Stefan Coleman*
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S. Biscayne Blvd., 28th floor
Miami, Florida 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

*Attorneys for Plaintiff and the putative Class*

*\*Pro Hac Vice motion forthcoming*

18